DOYLE et al. v. DIVISION NO. 1127 OF AMALGAMATED ASS'N. OF STREET, ELECTRIC RY. & MOTOR COACH EMPLOYEES OF AMERICA et al.

BARTON et al. v. SAME.

Civil A. Nos. 1947, 2059.

District Court, W. D. Louisiana, Alexandria Division.

April 29, 1947.

J. Lyle Debellevue, Asst. U. S. Atty., of Shreveport, La., for plaintiffs Doyle and others.

Cameron Murchison and Howard B. Gist, Jr., both of Alexandria, La., for plaintiffs Barton and others.

Aubrey B. Hirsch, of Baton Rouge, La., and O. David Zimring and Hans Lehmann, both of Chicago, Ill., for defendant Division No. 1127 of Amalgamated Ass'n. of Street, Electric Ry. and Motor Coach Employees of America.

Grove Stafford, of Alexandria, La., for defendant Southern Bus Lines, Inc., in both cases.

LeRoy Smallenberger, of Shreveport, La., for interveners-defendants (Veterans) in both cases.

PORTERIE, District Judge.

The applicable statute in this case is 50 U.S.C.A.Appendix, § 308(b) (B). We shall quote the dominant parts of the statute to this case. What we might term the preamble in (b) the phrase "other than a temporary position", and then all of (B): "If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so."

The defendant company was before the war, and has been since the war, primarily engaged in inter-city transportation of passengers by bus, is the holder of certificate of public convenience and is authorized to handle freight and express. Beginning in December 1940 and continuing through the early part of 1946, it engaged in camp-shuttle operations, in addition to the above-named function. Its certificate of public convenience covered, in the main, the area where in Louisiana army camps were first built and then occupied by tens of thousands of troops.

It has been proved clearly that the camp-shuttle operations were apart, separate and distinct, from the more exacting inter-city transportation. However, since there was great need for drivers for either purpose during the war, it is very clear that the camp-shuttle operations were used as a means of preparatory training to qualify drivers for inter-city transportation. It is preponderantly clear that the requirements for inter-city driving were much more exacting and called for more competent personnel than for those engaged in camp-shuttle operations. The Company, the Union, and the employees considered the two functions as separate and apart and it was only after a camp-shuttle driver had shown his competency as such that he was placed on the Board for inter-city transportation and had engaged in such competently and satisfactorily to the company for sometime and had been placed on the Extra Board before the Company would automatically declare this apprenticed driver an inter-city driver.

Seniority as an inter-city driver never began except from the date of employment as an inter-city driver; in no instance would seniority begin in favor of a man as an inter-city driver from the date of his employment as a camp-shuttle driver. As we have just said, this was accepted by the three interests in this case, the employees, the union and the company.

Doyle and his companion plaintiffs have made no proof that any one of them was ever an acknowledged formally declared inter-city driver. All of them have admitted that, though in some cases there were but a few months lacking, they were not such.

There appears in the case the fact that the Tri-State and the Interurban merged as of July 1, 1945, and it appears that seniority in the Tri-State was based retroactively from the date of employment, after capacity established, whilst in the Interurban the seniority was predicated as above explained, to wit: That an inter-city driver began his seniority from the date that he became such and not on the date that he was employed by the corporation in the other function.

We have considered that Tri-State and Interurban merged as of July 1, 1945, and that Locals Nos. 1216 and 1127 merged on September 1, 1945.

Contracts between the employer and its employees are well known. They form the handy basis of all relations between the employer and its employees and those contracts are always signed not only by the employer and the heads of the local, but must be approved, according to the constitution of the labor organization which is

well known to the employer, by the authorized representatives of the International. These contracts go into specific details, are read by and well known to the individual laborer.

See Section 2 of Article 3 and Section 2 of Article 17, of agreement of February 9, 1944, between Interurban and Division 1216.

There is of record a supplemental contract dated December 1, 1944, by the Interurban and the Union, whereby there was a binding agreement, anticipatory, to the effect that from the date of merger seniority would be established under the Tri-State method. However, it was agreed as to those employees of the Interurban who had not yet qualified as inter-city drivers that their seniority would be the date of merger, July 1, 1945.

The Court believes that the statute, the Act of Congress, dominates the power of the company, the employees and the union. Contracts made by the latter in violation of the statute's provisions are not good and must be modified to submit to the statute. We hold that the contract of December 1, 1944 was never put into actual operation; it was never put into effect. When the official roster under it was posted, numerous objections from the employees immediately arose and shortly thereafter this suit was filed.

The record discloses that when the agreement of December 1, 1944, was sent for the necessary signature of the labor official (which is disclosed by the blank without signature appearing on the document), regular process was had thereon. Officers of the International directed Mr. McBrayer (who has fully testified in this case) to make an open investigation. The decision of Mr. McBrayer is filed. This decision was affirmed by the Board of Appeals and then finally by the National Convention, so the contract of December 1, 1944, was never completed between the Interurban and the latter organization. This contract has no force in this case.

But when the supplemental contract of December 1, 1944, falls, the situation is that the former contract of February 9, 1944 between the Interurban and the drivers, represented by their duly selected bargaining agency, is in force. The former contract as to establishment of date of seniority in the interurban as previously described had several years of obedience by both contractants and for the good of the public service.

Moreover, a comparison of the two methods of dating seniority, Interurban and Tri-State, will disclose very little difference. The Tri-State did not engage in camp-shuttle operations, so it could not use such function as a proving ground, but it always took six months before the most apt driver became classified as an inter-city driver.

There are numerous veterans (thirty-one) who have intervened under the style of Allen M. Duckett et al., Intervener-defendants, claiming that when they went into the service they were already inter-city drivers and that upon their return all were employed by the company. They assert that to give former veterans classifications as inter-city drivers, when they were never such, and especially to declare them inter-city drivers and date their seniority from their date of employment as camp-shuttle drivers, is discrimination against them under the warranty of the statute.

If we were to rule with Doyle and his companion litigants, seniority would be granted on the bare experience of a camp-shuttle driver and the veteran thus re-employed on the basis of seniority established on his date of employment as a camp-shuttle driver would make of this veteran an inter-city driver without this veteran ever having had a day or an hour of driving experience as an inter-city driver.

No one appearing in this litigation has thought of the quasi-public service that this company and its employees has to furnish. We shall omit naming the many wholesome and public-spirited principles which support the theory of seniority, but seniority in employment to do a certain type of labor of necessity must be based upon experience in the performance of that type of labor. Doyle and his companions are seeking seniority in one type of work, based on labor and experience in another. To rule with Doyle and his companions, the company would give inferior service be-

cause relatively incompetent and relatively untrained drivers would be engaged in inter-city service.

At the peak of business of Interurban during the war there were one hundred twenty-five inter-city drivers and one hundred camp-shuttle drivers. At this time there are sixty-eight inter-city drivers here at Alexandria, with fifteen at Monroe, making a total of only eighty-three inter-city drivers. Since there is used today by Interurban, to perform its public service, barely over one-third of the personnel used at the peak of its business, why should the public be burdened with the driving of men not thoroughly experienced and the best picked for their work?

There is another type of co-complainant—not ex-service men, who are seeking to be given preference without ever having qualified as inter-city drivers. Their case, of course, is not any better than the thirteen unemployed veterans. These co-complainants number about forty, and we find that twenty-three are employed right now; seventeen are unemployed. Of course we know that employed or unemployed they have a cause of action, or rather a purpose, to heighten themselves in seniority rank.

■ Also we must obey the law, and the law says: " * * * has left or leaves a position, other than a temporary position." We rule that camp-shuttle operations were of a temporary character. They originated because of the war, and they ended with the cessation of hostilities. The Company was never organized for camp-shuttle operations; it took up such because of the war-created need, and it was best ready, of all public agencies, to perform it. This point is enough to dismiss the case of complainants.

However, there is the other thought that the men working for the Tri-State and the Interurban were organized and that their respective Local Divisions 1127 and 1216 were their respective bargaining agents. Under these respective contracts, there was some difference as to the date from which seniority was to be measured. In the case of the Tri-State, seniority reverted back to the actual first day of employment, if an inter-city driver after six months of trial

was retained in employment; in the case of the Interurban, the drivers were, in the main, proved out on the shuttle lot and then the names of these camp-shuttle drivers, if found competent, would begin to appear on the Emergency Board. Then, after some period, we think three months more or less, if the company had not dismissed them and continued to use them, and placed them on the Extra Board as inter-city drivers, they would on that day become classified as inter-city drivers, but the date from which to measure seniority was this latter date—of confirmation as an inter-city driver—and not the original date of employment as a camp-shuttle driver.

■ Applying the statute we have quoted, and using the principles in the case of Fishgold v. Sullivan Dry Docks and Repair Corporation, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and other cases decided in our Federal Courts, the ruling as made by the International Officers of the Union was legal. That ruling was that there would be a dove-tailing of the employees of both the Tri-State and the Interurban. That dove-tailing, however, was to be made according to the seniority rules that each set of drivers brought from their respective companies. We mean here that the recognized and declared inter-city drivers of Tri-State according to its method, with its local union, and the inter-city drivers of Interurban according to its method, with its local union, would establish respective chronological seniority for employment by the Southern Bus Lines, Incorporated.

Believing this to be the law, then, of course, again the complaint of plaintiffs falls. By their complaint they desire this Court to fix the date from which seniority is to be measured in the case of all Interurban drivers as the date of their first day of employment. The contention of complainants is based mainly on the point that they should be treated as to date for the beginning of seniority in the same manner that the seniority of the inter-city drivers of Tri-State is established.

■ We disagree with that for all the reasons above given in the course of this oral opinion, both factual and legal. The work of men on the proving grounds of the

Interurban is not the same work as that of men who are actually inter-city drivers. There is substantial difference in these occupations. The employment in the camp-shuttle operations of the Interurban was temporary, as shown aforesaid.

The complainants are not denied of a single benefit belonging to them at the time of induction. Their present prayer would give them, to a degree, seniority they never did have, or an increase in seniority to which they are not entitled. See Fishgold case, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, and Lord Manufacturing Co. v. Nemenz, D.C., 65 F.Supp. 711. Particularly, and persuasively: Johnson v. Interstate Transit Lines, D.C.Utah 1946, 71 F.Supp. 882.

Accordingly, we dismiss the complaint of petitioners.

There has been much play by counsel on both sides as to giving preference to veterans as against nonveterans. We believe this opinion is fair to the veterans as they are allowed all that which the beneficent statute of Congress gives them. Six of the present eighteen complainants are in the actual employ of the Southern Bus Lines at this very time of suit; the other twelve never were inter-city bus drivers before the date of their induction into service. They were engaged in camp-shuttle operations, a temporary position, and never had acquired seniority to be preserved for them while they were in the service. To now rule that the original date of their employment is the date from which their seniority as inter-city bus drivers begins, as has been discussed by four witnesses—veterans—for the defendant, and whose evidence was accepted as subject to duplication by some twenty others, would cause serious discrimination and a reduction in the seniority rank of many veterans in the employ of Tri-State, who were inter-city drivers, with rank attained and seniority to be preserved at the time of their induction.

The seniority lists of the Eastern and Western Divisions are distinctly separate. An inter-city driver going from one division to the other, no matter how high his home seniority, is placed at the bottom of the seniority list of his new division.

For all of the foregoing reasons we dismiss the complaint of petitioners.

We shall ask counsel on the prevailing side to prepare a findings of fact and conclusions of law for the facility of the court. After these are passed upon, modified and signed by the court, they will be filed in the record, to be followed by a formal judgment of dismissal to be prepared by prevailing counsel, and from the date of this judgment time will begin to run for a motion for a new trial, appeal, et cetera.

Gentlemen, that is my opinion, and you may guide yourselves accordingly.

### Findings of Fact

1. This action is filed under the provisions of the Selective Training and Service Act of 1940, as amended, especially Section 8 thereof, 50 U.S.C.A.Appendix, § 308.

2. The defendant, Southern Bus Lines, Incorporated, is a Louisiana corporation duly authorized and doing business in such state and maintaining a place of business within the Western District of Louisiana. On June 29, 1945, Interurban Transportation Company, Incorporated, was merged into Tri-State Transit Company of Louisiana, Incorporated, and subsequent to the merger said company became Southern Bus Lines, Incorporated. The latter company assumed all assets and liabilities of Tri-State Transit Company of Louisiana, Incorporated, and of Interurban Transportation Company, Incorporated, and the employes of the respective two companies were transferred to the payrolls, and became employes of Southern Bus Lines, Incorporated.

3. Prior to the merger, Division 1216 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, hereinafter called Division 1216, was the exclusive representative of the employes of Interurban Transportation Company, Inc., including the plaintiffs in this suit, for the purpose of collective bargaining as to wages, hours, and conditions of employment. The defendant, Division 1127 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, hereinafter called Division 1127, was the exclusive

representative of the employes of Tri-State Transit Company, including the intervening veteran-defendants, prior to the merger and has been, and is now, such representative of the employes of the defendant Southern Bus Lines, Incorporated, including the plaintiffs and the intervening veteran-defendants in this suit. Division 1216 was merged into Division 1127 as of September 1, 1945.

4. Interurban Transportation Company, Incorporated, was engaged for a number of years prior to the war in the transportation of passengers, mail and express by motor bus over considerable distances in Louisiana and neighboring states. Following the construction of army camps late in 1940 and early in 1941, the company started to conduct camp or shuttle bus operations, the purpose of such operations being the transportation of construction workers and members of the armed forces from and to the army camps. Such operations were apart, separate and distinct from the more exacting inter-city operations. The equipment was as a whole older than on the inter-city lines. The distances between the camps and the home terminals of the drivers were shorter, and the drivers did not have to handle any checked baggage or express shipments in contrast to the inter-city drivers. Requirements for the inter-city drivers called for more competent personnel than the camp or shuttle operations. All drivers, including the plaintiffs in this suit, were informed of such facts at the time of hiring. They were advised that they would only be accepted as permanent inter-city drivers after they had been employed on the inter-city lines in a probationary capacity and after they had been approved by the employer as inter-city extra board operators. They were also informed that the transfer to the inter-city lines, if agreeable to the company, was to be made regardless of the length of time spent in camp or shuttle service.

5. The collective labor agreement in effect between Division 1216 and Interurban Transportation Company, Incorporated, effective at the time of the merger, and previous labor agreements between these parties, as well, provided that the seniority of drivers on the inter-city lines was to begin on the dates such drivers were approved by the Company as extra-board operators. (Agreement of February 9, 1944, Section 2 of Article 3 and Section 2 of Article 17.)

6. Interurban Transportation Company, Incorporated, had employed 30 to 35 drivers on its inter-city lines prior to the start of the camp or shuttle service, while during the peak of the war they employed 120 inter-city drivers and 100 camp or shuttle drivers. The army camp operations continued to be conducted by defendant Southern Bus Lines, Incorporated, for a short period subsequent to the merger but were discontinued after the army camps were no longer used. Said defendant presently employs approximately 83 inter-city drivers on the lines which were operated before the merger by Interurban Transportation Company, Incorporated.

7. The 18 plaintiffs whose names appear in Exhibit A, hereinafter called the veteran-plaintiffs, were hired by Interurban Transportation Company, Incorporated, as drivers of camp or shuttle buses at various dates between May, 1941, and June, 1943. They worked in that capacity and the majority of them also did some driving on the inter-city lines in probationary capacity subject to the final approval by the company. Four plaintiffs, LeeRoy Miller, Joe A. Barmore, J. A. Adams and Joe Lamar Dougherty were so approved. For want of proof it cannot be said whether or not the services of the other veteran-plaintiffs would have been satisfactory to their employer and whether or not they would have been approved as inter-city extra-board operators if they had not been inducted into the armed forces.

8. Said veteran-plaintiffs were inducted into the armed forces of the United States under the provisions of the Selective Training and Service Act of 1940, as amended. They were honorably discharged and applied for re-employment with the defendant Southern Bus Lines, Incorporated, within the period provided by law. They were re-employed by said company as inter-city drivers since the camp operations formerly conducted by the Inter-

urban Transportation Company, Incorporated, had ceased at the time of their re-employment. Such veteran-plaintiffs as had been approved as extra-board operators on the inter-city lines of Interurban Transportation Company, Incorporated, were given seniority as of the date of such approval. The other veteran-plaintiffs were given seniority as of July 1, 1945. All veteran-plaintiffs were paid at the rate of pay they would have been paid if they had not entered the armed forces, and they benefited from the increases in the rate of pay agreed upon between Division 1127 and Southern Bus Lines, Incorporated, or its predecessors, during the time that they were in the service.

9. All veteran-plaintiffs are still carried as bus drivers on the seniority roster of the defendant Southern Bus Lines, Incorporated, except Vernon Coco. This employe after his re-employment relinquished his seniority rights as a bus driver and changed his employment with the company to that of apprentice maintenance man. —— veteran-plaintiffs continue working as inter-city bus drivers, while —— have been furloughed because of a retrenchment in the number of bus drivers needed by the company. They were furloughed in inverse order of their seniority standing and are entitled to being re-called in accordance with their seniority standing if and as work becomes available, in preference to bus drivers hired from the outside.

10. The fifty-two plaintiffs whose names appear on Exhibit B, hereinafter called the non-veteran plaintiffs, were hired by Interurban Transportation Company, Incorporated, as drivers of camp or shuttle buses at various dates between January of 1941 and June of 1945. They worked in this capacity for some time and the majority of them did some driving in probationary capacity on the inter-city lines operated by the company and were approved as extra-board operators on such lines prior to the merger of Interurban Transportation Company, Incorporated, into the defendant Southern Bus Lines, Incorporated. The seniority roster now in effect as agreed upon by Division 1127 and the defendant Southern Bus Lines, Incorporated, grants to the non-eveteran plaintiffs the same seniority standing as to the veteran-plaintiffs; that is, as of the date of approval as extra-board operators on the inter-city lines of Interurban Transportation Company, Incorporated, if they were so approved, and as of July 1, 1945, if they were not so approved. Such seniority standing is in accordance with the ruling of the international officers and of the convention of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, to be mentioned below under 17.

11. The non-veteran plaintiffs, Eugene L. Forman, Wm. J. Gauthier and Wm. E. Reeder, have been discharged from the service of the company and do not hold any seniority rights with the company for that reason.

12. Tri-State Transit Company of Louisiana, Incorporated, for a number of years operated under several written agreements with Division 1127 which provided that the lines were divided into two districts for drivers for seniority purposes, consisting of the Eastern district, comprised of lines east of the Mississippi and the Western district, comprised of lines west of the Mississippi, including the operations from Shreveport, Louisiana, to Jackson, Mississippi, and from Baton Rouge to New Orleans. A driver transferring from one seniority district to another loses his accumulated seniority and starts his service in the other district at the bottom of the seniority roster. The lines operated by the Interurban Transportation Company, Incorporated, prior to the merger were within the territory covered by the Western seniority district of the Tri-State Transit Company of Louisiana, Incorporated, and which now is part of the Western seniority district of the defendant Southern Bus Lines, Incorporated. The drivers employed in the Eastern seniority district of the defendant Southern Bus Lines, Incorporated, would not be affected if the request of the plantiffs in this action were to be granted, since the plaintiffs did not acquire any seniority rights in said Eastern district.

13. Tri-State Transit Company of Louisiana, Incorporated, did not operate any

camp or shuttle service within the territory covered by the Western seniority district, but operated such service in the Eastern district. The drivers of said company were hired and trained as inter-city drivers and after a qualifying period were given seniority as of the date of hiring in accordance with the applicable labor agreements with Division 1127. Camp and shuttle operators in the Eastern seniority district were also hired and trained as inter-city operators, and were given seniority as of the date of hiring. During the war period, however, they were not permitted to exercise their seniority and to bid into runs in the inter-city service.

14. On December 1, 1944, the officers of Division 1216 and of the Interurban Transportation Company, Incorporated, executed a supplementary agreement, according to which, in the event of a merger of said company and the Tri-State Transit Company of Louisiana, Incorporated, seniority should begin on the date the operator entered the service of said company regardless of whether or not he was hired as a camp or shuttle or inter-city bus operator. It was the understanding of both parties that such agreement was to be submitted for approval to the international officers of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, and a blank space was left for the signature of the International Officers. No such approval was given.

15. By order issued on May 1, 1945, the Interstate Commerce Commission approved the merger of Tri-State Transit Company of Louisiana, Incorporated, and Interurban Transportation Company, Incorporated. On May 10, 1945, a seniority roster for bidding purposes was posted giving all operators seniority as of the date of hiring. Such roster was protested by various members of Division 1216, was taken down at the request of the president of such Division, and was never put into effect. Another seniority roster for bidding purposes was posted on May 25, 1945, which contained only the names of drivers who were approved for service on the inter-city lines. Some bids were accepted under the May 25, 1945 roster, but because of an intervening work stoppage, operations in accordance with that roster were conducted only from June 16, 1945, to the date of the merger.

16. At a meeting of Division 1216 held on June 9, 1945, a resolution was passed to submit the existing seniority dispute, which had been caused by the posting of the two rosters mentioned before, for decision to the international officers of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America. General Executive Board Member, Thomas L. McBrayer, at the direction of the International Officers, investigated the dispute at Alexandria. He discussed the facts with the officers of the Interurban Transportation Company, Incorporated, and heard the officers and members of Division 1216, as well as the officers of Division 1127, which Division was interested in the issue because of the impending merger. On July 3, 1945, he rendered a written decision to the effect that after the merger the seniority of drivers of Interurban Transportation Company, Incorporated, who had been approved as inter-city operators was to begin from the date of such approval and the seniority of the camp and shuttle drivers of said company was to begin from July 1, 1945. The effect of this decision was to establish seniority of the inter-city drivers of the Southern Bus Lines, Incorporated, as of the date they started their work in the inter-city service of the predecessor companies. The camp and shuttle operators of the Interurban Transportation Company, Incorporated, who had not been approved as inter-city operators of such company were given seniority below that of any inter-city operator in service at the time of the merger, but ahead of any such operators hired subsequently. If the plaintiffs were to be accorded seniority as of the date of hiring, former camp or shuttle bus operators of Interurban Transportation Company, Incorporated, would receive an unfair advantage over the inter-city drivers of Tri-State Transit Company of Louisiana, Incorporated, including the intervening veteran-defendants. Such former camp or shuttle bus operators would be given credit for a period of time when they did not work as inter-city bus operators, when they did

not know whether or not they would be accepted as inter-city operators, and when under the applicable labor agreements and understandings between the employer and the employes they did not have seniority as inter-city operators.

17. The ruling by General Executive Board Member McBrayer was appealed to the General Executive Board of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, which body heard representatives of both divisions and received other evidence in a hearing lasting a full business day. Mr. McBrayer's decision was upheld by a written ruling issued September 4, 1945. Several of the members of the former Division 1216 appealed such ruling to the convention of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, and representatives were heard before the appeals committee of the convention at Chicago, June 14, 1946. The convention adopted the report of said committee, which ruled to sustain the decision of the General Executive Board. Under the constitution of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, the convention is the highest body within the organization to hear and pass upon appeals of any member against a decision by the General Executive Board.

### Conclusions of Law

1. The court has jurisdiction over the parties and of the subject matter involved herein.

2. The positions held by the veteran plaintiffs with Interurban Transportation Company, Incorporated, prior to their approval as inter-city extra-board operators were only temporary within the meaning of the Selective Training and Service Act of 1940, as amended.

3. The veteran plaintiffs failed to prove that they had established seniority prior to the dates they were approved as inter-city extra-board operators by Interurban Transportation Company, Incorporated, if they were so approved, and prior to July 1, 1945, if they were not so approved.

4. The defendant Southern Bus Lines, Incorporated, has fully complied with the provisions of Section 8(b) and (c) of the Selective Training and Service Act of 1940, as amended, in restoring the veteran plaintiffs to the positions which they occupied prior to their entry into military service; by giving them the increased rate of pay now prevailing for those positions, and in establishing their seniority as of the date they were approved as inter-city extra-board operators by Interurban Transportation Company, Incorporated, if they were so approved, and as of July 1, 1945, if they were not so approved.

5. The agreement of December 1, 1944, between Division 1216 and Interurban Transportation Company, Incorporated, purporting to establish the seniority of all operators as of the date of hiring is invalid since (a) it was made subject to the approval of the international officers of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, which approval was not given, and (b) it was according to its terms to be effective only as of the date of the merger between Interurban Transportation Company, Incorporated and Tri-State Transit Company of Louisiana, Incorporated, and it therefore, affected the rights of the employes of Tri-State Transit Company, Incorporated, represented by Division 1127, and it was not approved or ratified by said employes or by said Division 1127.

6. The non-veteran plaintiffs did not acquire seniority rights as employes of Interurban Transportation Company, Incorporated, or of defendant Southern Bus Lines, Incorporated, beyond those acquired by the veteran plaintiffs. Under the valid agreements entered into between Interurban Transportation Company, Incorporated, and Division 1216, the collective bargaining agent of such employes under the National Labor Relations Act, 29 U.S.C.A. §§ 151–166, said employes acquired seniority rights as inter-city drivers as of the dates they were approved by their employers as inter-city extra-board operators, if they were so approved, and as of July 1, 1945, if they were not so approved.

7. The seniority rights of the non-veteran plaintiffs are in accordance with deci-

sions of the officers and tribunals of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, of which union all plaintiffs are members. Said decisions were rendered to settle the dispute over seniority rights existing within Division 1216 and after the merger of said Division into Division 1127, between the members of the former Division 1216 and Division 1127. The plaintiffs had a full and fair hearing before the tribunals of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America. The decisions by said tribunals were in accordance with the constitution of that organization; they were neither in excess of their jurisdiction, nor fraudulent, in bad faith, nor in contravention of any public policy or of the law of the land. As a matter of law, they will not be disturbed by this court.

8. The defendants are entitled to judgment herein dismissing the complaints of both the veteran-plaintiffs and the non-veteran plaintiffs on the merits.